IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 6:18-cr-10099-EFM-1 |
| ) | |
| BRADLEY A. PISTOTNIK and ) | |
| DAVID DORSETT, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## MOTION TO COMPEL COMPLIANCE WITH SUBPOENA

COMES NOW the defendant, Bradley A. Pistotnik, by and through his attorneys, Kurt Kerns, Kepler Funk, and Alan Diamond, and moves this Court pursuant to the 6th Amendment to the United States Constitution and Fed.R.Crim.P. 17, to issue an Order requiring compliance with the previously issued subpoena. In support of this motion, the undersigned respectfully requests that the Court consider the following:

1. On September 26, 2018 Xcentric received a subpoena *duces tecum* issued by Pistotnik requesting documents and other data.

2. On October 15, 2018 Xcentric filed a Motion To Quash The Subpoena (Doc. 47) citing as to the items requested by defendant in paragraphs 4 and 5 of the subpoena the following objections:

> Requests in paragraphs 4 and 5 of Exhibit 1 request documents that are privileged, or would otherwise disclose defensive architecture that needs to remain private. All other information that would be responsive to this request was already provided to the F.B.I. and is available to Defendant in discovery. Collecting this information would also be burdensome, including the need for a privilege review, and logging, and heavy redacting.

1

3. On February 12, 2019 the Court filed a Memorandum & Order on Motion to Quash Subpoenas (Doc. 66). The Court found *inter alia*:

   > Defendant is now merely requesting backup on information on this particular invoice. The underlying documentation of the victim's damages is relevant and to the extent Categories 4 and 5 intend to seek such documents, the requests are relevant. The Court also finds that Categories 4 and 5 clear the hurdles of admissibility and specificity, As such, the Court **OVERRULES** Xcentric's overly burdensome objection and **DENIES** the motion to quash as to Categories 4 and 5.

4. Additionally, the Court ordered:

   > **IT IS FURTHER ORDERED** that the documents to be produced in accordance with this Order shall be submitted to the chambers of the undersigned Magistrate Judge at the United States District Courthouse for the District of Kansas, Wichita Division, 401 N. Market, Suite 401, Wichita, Kansas, 67202 on or before 10:00 a.m. on March 13, 2019. Chambers will then arrange for defense counsel to inspect the documents.

5. Xcentric filed a Notice of Compliance on March 13, 2019 (Doc. 73).

6. While Xcentric argued in its Motion to Quash (Doc.47) that "collecting this information would be burdensome, including the need for a privilege review, and logging, and heavy redacting" the produced pages totaled only five in number.

7. The Court, in denying Xcentric's Motion to Quash as to categories 4 and 5, never gave permission to redact the requested items.

8. Nonetheless, the documents received consisted of a two (2) page "modified invoice" and three (3) pages of redacted invoices. (**EXHIBIT A**).

9. The documents sought in the subpoena and those allowed by the Court were:

   > 4) All Documents that refer to your response to the First Attack or Second Attack.

2

> 5) All Documents that refer to the effects of the First Attack
> or Second Attack, including all mitigation, troubleshooting,
> investigatory, or remedial steps.

10. The five pages of documents produced by Xcentric are so heavily redacted that they are of little or no use for the defense to have a meaningful review by the defendant and his experts such that any opinion can be made as to their veracity and any evidentiary value as to the element of loss in this case. As produced, the redacted pages provide insufficient documentation toward loss. **(EXHIBIT A).**

11. Count 6 of the Indictment (Doc.1) requires the government to prove a loss of at least $5,000 in value.

12. The Court denied Xcentric's Motion to Quash so that the defendant can view the basis underlying the claimed loss[1]. In fact, the Court stated, "The Court reads Categories 4 and 5 as seeking documentation underlying Xcentric's claimed damages". (Doc. 66 p. 16).

13. The provided items do not provide any documentation related to reasonable costs to the alleged victim, costs associated with the response to the alleged offense, cost of any damage assessment, restoration of any data, program, system, etcetera.[2] Further, nothing provided addresses the condition of the system, data etc. prior to the alleged damage.

14. Count 6 of the Indictment alleges criminal conduct between September 15, 2014 and July 2, 2015. The documents provided do not indicate that they relate to the time frame alleged in Count 6. In fact, the documents specifically refer to actions taken by Ripoff Report on

---

[1] 18 U.S.C. 1030(a)(5)(11)-the term "**loss**" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service;

[2] It is unknown based on documents received if anything was lost thus necessitating a restoration.

January 26, 2016 some 17 months after the first attack and more than 6 months after the second attack referenced in the alleged conspiracy found in Count 6 of the Indictment.

15. Furthermore, the document which was received is seemingly an invoice dated 1/26/2016 from Vigilant invoiced to "Duck Bites, LLC." of Tempe, Arizona. Duck Bites, LLC. is not an alleged victim anywhere in the Indictment, let alone Count 6.

16. It appears that Xcentric has chosen to unilaterally censor subpoenaed documents and in its cover letter to the Court instructs the defendant to engage an expert to interpret the redacted and censored documents.

17. The subpoena issued and the Court Order confirming the production of items never gave Xcentric the authority to redact or censor any data. Despite Xcentric's assurance that an expert can interpret the redacted data – the defense experts consulted have not been able to penetrate the blacked out data to assist in the defense of Count 6.

18. The parties had, previous to the releasing of the documents, agreed to a confidentiality agreement which would limit the dissemination to non-authorized persons.

19. As a result, the Court further ordered (Doc. 74) and specifically discussed confidentiality.

> MINUTE ORDER as to Bradley A. Pistotnik, David Dorsett. Certain documents have been produced to chambers by Xcentric Ventures, LLC pursuant to this Court's order 66 . The Court has inquired of parties and Xcentric concerning the method of providing the documents to the parties. The Magistrate Judge will produce 3 copies of the documents, one for the Government and one for each Defendant. Counsel may pick up the copies from the Magistrate Judge's chambers. The documents shall be considered marked "confidential" within the meaning of the prior Protective Order 57 without prejudice to a party's right to challenge the designation as provided in that Order. Signed by Magistrate Judge Kenneth G. Gale on March 19, 2019. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (Gale, Kenneth) (Entered: 03/19/2019)

20. In seeking to quash the subpoena as to items requested in paragraphs 4 & 5, Ripoff report (et. al.) suggested, "Presumably all of the information provided to the F.B.I. about the attacks has been provided to the Defendants in discovery." (Doc. 47 ¶25).

21. Regardless of Ripoff report's assertion above, it was not authorized under the subpoena to withhold information and documents to the defense merely because it believes documents may have been given to the F.B.I. and thus provided to the defense in discovery.

22. Not only did Xcentric unilaterally choose to redact information, it also took it upon itself to fail to comply with the request in the subpoena to disclose all documents which refer to the response and the effect of the first and second attack.

23. In fact, the defendant knows that more documents exist and are in the possession of Xcentric d.b.a. Ripoff Report.  For example, the government provided two emails in discovery. The first, dated January 22, 2016 from Ed Magedson (owner of Ripoff report) to Carl Ingram of Vigilant[3] requesting "a bill as to what your costs were or what you are charging me for all this mess." The second, dated January 26, 2016, appears to be the response to the email request with an additional non-provided item of a previous draft/version of the invoice ostensibly showing damages. (**EXHIBIT B**). These documents, while not provided in compliance with the subpoena, are clearly related to documentation underlying Xcentric's claimed damages[4].

24. The "modified" invoice provided by Xcentric, as referenced in the cover letter to the Court dated March 12, 2019, describes as the first line item "XJY-645-7707 check Traffic & Email Logs-support hours @120/hr for a total of $6112.00 USD[5]" (**EXHIBIT A pg. 6**). In contrast, the non-provided invoice (which is the purported basis on which the

---

[3] Corporation allegedly responsible for addressing the purported damages.
[4] As ordered by the Court (Doc. 66 p. 16)
[5] This equates to 50.933 hours.

modification is modeled) lists as its first line item "XJY-645-7707 Check Traffic & Email Logs . . . 5 [five] [hours]". (**EXHIBIT B p. 1**). This is an inexplicable, tenfold difference in man hours expended.

25. Therefore, it is crucial that Xcentric provide the basis for and detail associated with the seemingly unique ticket ID# (XJY-645-7707), as well as, the detail for all of the other ticket ID numbers referenced on the non-provided invoice (**EXHIBIT B**).

26. Additionally, while the provided document claims damages/loss in the amount of $72,261.50 there is no provided documentation to show the manner and date this invoice was actually paid and by whom given that the modified invoice is sent to a corporation (Duck Bites, LLC.) not listed in any count of the Indictment.

27. These requested items are necessary so the defense can review and confront all of the documentation underlying the claimed damage/loss. This information is relevant, admissible, specific and previously ordered to be provided by the Court as "backup on information on this particular invoice." (Doc. 66 p.16).

**WHEREFORE**, Mr. Pistotnik respectfully asks the Court to Order Xcentric, who was the subject of the previously issued subpoena, to comply with the full language and intent of the subpoena and Court's Order.

/s/ Kurt Kerns_____
Kurt Kerns
328 N. Main
Wichita, Kansas 67202
kurtpkerns@aol.com
KS Bar #15028

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of April, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all involved persons.

/s/ Kurt Kerns_____
Kurt Kerns KS Bar #15028